

Doc #: 2018063534
06/26/2018 12:48 PM

When Recorded. Return to:
Rick Eisen, Attorney
Eisen and Rome, P.C.
One Thomas Circle, NW, Suite
1010
Washington, DC 20005

## MEMORANDUM OF GROUND LEASE AGREEMENT

THIS MEMORANDUM OF GROUND LEASE AGREEMENT (this **"Memorandum"**) entered into as of this 25th day of June 2018, by Valor 1634, LLC, a District of Columbia limited liability company, together with any successor or assign **("Landlord"),** and K STREET, LLC, a District of Columbia limited liability company, together with any successor or assign permitted by the Lease **("Tenant").**

## WITNESSETH:

1.    Landlord and Tenant entered into a Ground Lease dated as of June 25 2018 (the **"Lease")** relating to the fee simple interest in the land described on Exhibit A attached hereto and made a part hereof (the **"Premises").**

2.    The initial term of the Lease shall commence on June 25, 2018, and terminate on June 24, 2117.

3.    By that certain Special Warranty Deed recorded immediately prior hereto, Tenant has granted and conveyed to Landlord a fee simple interest in the Premises and a future estate and remainder interest in and to the Improvements (as defined below) effective automatically upon the expiration or termination of the Lease. As used herein, **"Improvements"** shall mean, collectively, all the buildings, structures, improvements, fixtures, furniture, equipment, heating, ventilation, air conditioning, plumbing, electrical, mechanical. utility and life safety systems, and all building fixtures and furniture therein (including parking areas, and driveways) now or hereafter located on the Premises, including, without limitation, all plants, apparatus, appliances, furnaces, boilers, engines, motors, compressors, dynamos. elevators, fittings, machinery, piping, connections, conduits, ducts, equipment, partitions. furnishings, medical equipment, personal property and operating systems of every kind and description now or hereafter affixed and attached to any such buildings, structures or improvements or now or hereafter used or procured for use in connection with the elevator, heating, cooling, lighting, plumbing, ventilating, air conditioning. refrigeration, cleaning, security, telecommunications or general operation of any such buildings, structures or improvements or its fixtures, equipment or machinery from time to time.

4.    Subject to the terms and conditions of the Lease, Tenant has a right to purchase the Premises in accordance with Article XIX of the Lease.

5.    This Memorandum shall be construed in connection with the Lease. This Memorandum has been executed for purposes of public recording and to give notice of the Lease and all of its terms, covenants, agreements, conditions and provisions to the same extent as if the Lease were fully set forth herein. This Memorandum of Lease hereby expressly incorporates by reference all terms, agreements, conditions, covenants and provisions of the Lease, and those terms, agreements, conditions, covenants and provisions are hereby made a part hereof. It is not intended that this Memorandum constitute an amendment to the Lease, and the Lease shall control in the event of any inconsistency between the Lease and this Memorandum. All rights and obligations of Tenant and Landlord and any persons claiming by, through or under either of them shall be subject to all provisions and conditions of the Lease, a copy of which is on file with the parties at the addresses indicated herein and to which all interested persons are hereby referred for further particulars.

6.    This Memorandum shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, successors-in-interest and assigns and shall be deemed to contain covenants running with the land.

7.    This Memorandum may be executed in counterparts, each of which shall be deemed an original and part of one and the same document.

*[signature pages follow}*

2

GROUND LESSOR:

**VALOR 1634 LLC**

By: _____

Name: Joseph Bous

Title: Manager

STATE OF _____ )

                           ) ss.

COUNTY OF _____ )

I hereby certify that on this 25 day of _____ , 2018, before me the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared Joseph Bous, sole member of Valor 1634, LLC, a District of Columbia limited liability company known to me or satisfactorily proven to be the person whose name is subscribed to the foregoing and annexed Lease bearing date as of _____ , 2018, who being by me first duly sworn, did acknowledged the same to be his act and deed.

In testimony whereof, I have affixed my official seal the date above written.

_____

Notary Public

My Commission expires: ___

RICHARD C. EISEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires July 14, 2018

3

GROUND LESSEE:

**K STREET, LLC**

By: _[signature]_____
Name: HABTE SE ӨLⱮⱤ
Title: Manager

STATE OF _____ DC _____ )
                         ) ss.
COUNTY OF _____ )

I hereby certify that on this 25 day of Jun , 2018, before me the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared Heln Sguer , the Mange of K Street, LLC known to me or satisfactorily proven to be the person whose name is subscribed to the foregoing and annexed Lease bearing date as of Jun 25 , 2018, who being by me first duly sworn, did acknowledged the same to be his act and deed.

In testimony whereof, I have affixed my official seal the date above written.

_[signature]_____
Notary Public

My Commission expires: _____

**EXHIBIT A**

**To Memorandum of Lease**
**DESCRIPTION OF PREMISES LAND ONLY**

All of that certain lot or parcel of land situated, lying and being in the District of Columbia, and being more particularly described as follows:

Lot numbered One Hundred Twenty-Two (122) in Square numbered One Thousand Two (1002) as per plat recorded in the Office of the Surveyor for the District of Columbia in Book 210 at Page 152.

Excepting therefrom all buildings and improvements located on the beforementioned land.

```
Doc #: 2018063534
Filed & Recorded
06/26/2018 12:48 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES        $25.00
   SURCHARGE            $6.50
   RECORDATION TAX FEES $63,095.23
   TRANSFER TAX FEES    $63,095.23
TOTAL:                  $126,221.96
```

**EXHIBIT**

**B**

## FIRST DEED OF TRUST PROMISSORY NOTE

$6,300,000.00

Washington, DC
June 25, 2018

      FOR VALUE RECEIVED, **K STREET, LLC,** a District of Columbia limited liability company having a mailing address of 1610 11th Street, NW, #4A, Washington, DC 20001 ("Borrower") promises to pay to **OLD LINE BANK,** a Maryland corporation ("Lender"), or order, at 1525 Pointer Ridge Place, Bowie, Maryland 20716, or at such other place as Lender may from time to time in writing designate, in lawful money of the United States of America, the principal sum of **Six Million Three Hundred Thousand and 00/100 Dollars ($6,300,000.00)** (or the unpaid balance of all principal advanced, and outstanding under the note, if that amount is less) (the "Principal Balance"), together with interest on the Principal Balance outstanding from time to time at the rates set forth herein, in like money, from the date of this Promissory Note (this "Note"), to and including the Maturity Date.

      1.    <u>Interest Rate</u>.  During the term of the Loan, interest on the outstanding Principal Balance of the Loan shall accrue and be payable at the fixed rate of **4.75%** per annum.

      2.    <u>Repayment; Balloon Payment</u>.  Beginning on July 25, 2018 and continuing on the 25th calendar day of each successive calendar month thereafter until June 25, 2020, Borrower shall pay to the holder monthly installments of interest only calculated on the outstanding Principal Balance at the Interest Rate.  Beginning on July 25, 2020 and continuing on the 25th calendar day of each successive calendar month thereafter until June 25, 2023 (the "Maturity Date"), Borrower shall pay to the holder monthly installments of principal and interest in an amount to be determined by Lender and calculated on the basis of a Twenty-Five (25) year amortization schedule.  This Note will mature on the Maturity Date, and on that date, Borrower shall pay to Lender the entire amount of the unpaid Principal Balance, plus all accrued and unpaid interest, late charges, if any, and all other sums due under this Note.

      3.    <u>Calculation of Interest</u>. Interest shall be calculated on the basis of a three hundred sixty (360) days per year factor applied to the actual days on which there exists an unpaid balance hereunder.

      **THE BORROWER IS REQUIRED TO REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE ON THE MATURITY DATE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.  THE BORROWER MAY, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT THE BORROWER MAY OWN, OR THE BORROWER MAY HAVE TO FIND A LENDER, WHICH MAY OR MAY NOT BE THE LENDER, WILLING TO LEND THE BORROWER THE AMOUNT REQUIRED TO PAYOFF THIS LOAN.  IF THE BORROWER REFINANCES THIS LOAN ON THE MATURITY DATE, THE BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF THE BORROWER OBTAINS REFINANCING FROM THE LENDER.**

4.    <u>Late Payment Charge</u>. Time is of the essence hereof and if any payment due hereunder, including any final installment, is not received by the Lender within fifteen (15) calendar days of when due, the Borrower shall pay to the Lender a late charge payment equal to five percent (5%) of the amount of such installment or the maximum rate permitted by law, whichever is less (the "Late Payment Charge"). The Late Payment Charge shall be due whether or not the Lender declares this Note in default or accelerates and demands immediate payment of the sums due hereunder. The existence of the right by the Lender to receive a late payment charge shall not constitute a grace period or provide any right in the Borrower to make a payment other than on its due date.

5.    <u>Application of Payments</u>. All payments made hereunder shall be applied first to late payment charges or other sums owed to the Lender, next to accrued interest, and then to principal, or in such other order or proportion as the Lender, in the Lender's sole discretion may elect from time to time.

6.    <u>Prepayment</u>. Borrower may prepay the Principal Balance in whole or in part at any time, without penalty, provided that each such payment shall be accompanied by payment of all unpaid costs, fees, expenses and late charges, if any, which are due, all accrued and unpaid interest due as the date of such prepayment. Partial prepayments shall be applied first to late payment charges or other sums owed to the holder, next to accrued and unpaid interest, then to the outstanding Principal Balance

7.    <u>Default</u>. Upon (a) any failure of the Borrower to make any payment required under this Note, which such default shall remain uncured ten (10) days following the delivery by Lender of written notice thereof, or (b) the occurrence of an Event of Default under the Deed of Trust (as defined below) or any of the other Loan Documents (as defined in the Deed of Trust), (either of which events shall constitute a "Default" hereunder), the Lender may have the following rights in addition to all other rights and remedies available under the Loan Documents:

7.1    <u>Acceleration</u>. The holder of this Note, in the holder's sole discretion and without notice or demand, may declare the entire unpaid Principal Balance plus accrued interest and all other sums due hereunder immediately due and payable.

7.2    <u>Default Rate of Interest</u>. The holder of this Note, in the holder's sole discretion and without notice and demand, may raise the rate of interest accruing on the unpaid Principal Balance by five percentage points (5%) above the rate of interest otherwise applicable, independent of whether the holder elects to accelerate the unpaid Principal Balance as a result of such default, and may exercise any rights, powers and remedies available to it under this Note, under any other Loan Document, and at law or in equity, and all such remedies shall be cumulative. If the default rate of interest is imposed by the holder, the default rate shall remain in effect until the Default authorizing the increase in the interest rate is cured to the holder's satisfaction and the holder in writing agrees to reinstate the regular interest rate. Any individual waiver of the holder's right to impose the default rate of interest or to retain the default rate of interest after imposition thereof shall not be considered a waiver of this section or any future right of the holder to impose the default rate of interest pursuant to this Section.

If any holder of this Note retains an attorney to collect, enforce or defend this Note or any other Loan Document in any lawsuit or in any probate, reorganization, bankruptcy, arbitration or other proceeding, or if the Borrower sues any holder in connection with this Note or any other Loan Document, then the Borrower agrees to pay to each such holder, all costs and expenses incurred by such holder in trying to collect this Note or in any such suit or proceeding, including attorneys' fees.

8.    <u>Lender Remedies</u>.  The remedies of Lender, as provided in this Note and the Deed of Trust and any other Loan Documents, shall be cumulative and concurrent and may be pursued singularly, successively or together, at the sole discretion of Lender, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

The term "Deed of Trust" shall mean the First Leasehold Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of even date with this Note, from Borrower to the Trustees specified therein, in trust for Lender, covering certain real and personal property described therein situated in the District of Columbia (the "Property").

9.    <u>Maximum Rate of Interest</u>.  Notwithstanding any provision in this Note, the total liability for payments of interest and payments in the nature of interest, including without limitation, all charges, fees or any sums which may at any time be deemed to be interest, shall not exceed the amount which Lender may lawfully collect.  In the event the total liability for payments of interest and payments in the nature of interest, including without limitation, all charges, fees or other sums which may at any time be deemed to be interest, shall, for any reason whatsoever, result in an effective rate of interest, which for any month or other interest payment period exceeds the amount which Lender may lawfully collect, all sums in excess of those lawfully collectible as interest for the period in question shall, without further notice to any party hereto, be applied as a premium-free reduction of the Principal Balance immediately upon receipt of such sums by Lender, with the same force and effect as though Borrower had specifically designated such excess sums to be so applied to the reduction of the Principal Balance; provided, however, that Lender may, at any time, and from time to time, elect, by notice in writing to Borrower, to waive, reduce or limit the collection of any sums (or refund to Borrower any sums collected) in excess of those lawfully collectible as interest rather than accept such sums as prepayment of the Principal Balance.

10.    <u>Commercial Purpose</u>.  The Borrower warrants that (i) the Loan (as defined in the Deed of Trust) is being made solely to acquire or carry on a business or commercial enterprise; (ii) Borrower is a business or commercial organization; (iii) all of the proceeds of the Loan shall be used for commercial purposes; (iv) the Loan shall be construed for all purposes as a commercial loan; and (v) is not made for personal, family or household purposes.

11.    <u>**CONFESSION OF JUDGMENT**</u>.    **UPON THE OCCURRENCE OF A DEFAULT, THE BORROWER HEREBY SUBMITS (AND WAIVES ALL RIGHTS TO OBJECT) TO NONEXCLUSIVE PERSONAL JURISDICTION IN THE STATE OF MARYLAND AND AUTHORIZES ANY ATTORNEY DESIGNATED BY THE LENDER OR ANY CLERK OF ANY COURT OF RECORD IN MARYLAND OR ELSEWHERE TO APPEAR FOR THE BORROWER IN ANY COURT OF RECORD AND CONFESS JUDGMENT AGAINST THE BORROWER WITHOUT PRIOR HEARING IN FAVOR OF**

**THE LENDER FOR THE UNPAID PRINCIPAL BALANCE OF THIS NOTE, ALL ACCRUED AND UNPAID INTEREST THEREON, ALL OTHER AMOUNTS PAYABLE BY THE BORROWER TO THE LENDER UNDER THE TERMS OF THIS NOTE, AND THE ACTUAL COSTS OF SUIT AND ATTORNEYS' FEES OF FIFTEEN PERCENT (15%) OF THE UNPAID PRINCIPAL BALANCE.   NOTWITHSTANDING THE FOREGOING, LENDER ACKNOWLEDGES THAT ATTORNEYS' FEES ARE STATED TO BE FIFTEEN PERCENT (15%) SOLELY FOR PURPOSES OF FIXING A SUM CERTAIN FOR WHICH JUDGMENT CAN BE ENTERED BY CONFESSION; AND LENDER AGREES THAT IN ENFORCING ANY JUDGMENT BY CONFESSION, LENDER SHALL NOT DEMAND, SOLELY WITH RESPECT TO ATTORNEYS' FEES, ANY AMOUNTS IN EXCESS OF THE ACTUAL AMOUNT OF ATTORNEYS' FEES CHARGED OR BILLED TO THE LENDER.**

The Borrower hereby releases, to the extent permitted by applicable law, all errors and all rights of exemption, appeal, stay of execution, inquisition and other rights to which the Borrower may otherwise be entitled under the laws of the United States of America or of any state or possession of the United States of America now in force and which may hereafter be enacted.

If judgment is entered against the Borrower on this Note, the amount of the judgment entered (which may include principal, interest, fees, and costs) shall bear interest at the higher of the maximum interest rate imposed upon judgments by applicable law or the above described default interest rate, to be determined on the date of the entry of the judgment.

**12.    Waiver of Jury Trial. THE BORROWER WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH THE BORROWER AND THE LENDER MAY BE PARTIES, ARISING OUT OF OR IN ANY WAY PERTAINING TO THIS NOTE, THE LOAN AGREEMENT, THE DEED OF TRUST OR ANY OF THE OTHER LOAN DOCUMENTS.   IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AND COUNTERCLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING, CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS NOTE. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE BORROWER.**

13.    General Provisions.   If more than one person or entity executes this Note as Borrower, all of such parties shall be jointly and severally liable for payment of the indebtedness evidenced hereby.  The Borrower and all sureties, endorsers, guarantors and any other party now or hereafter liable for the payment of this Note, in whole or in part, hereby severally (a) unless expressly required under the terms of this Note, waive demand, presentment for payment, notice of dishonor and of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices (except any notices which are specifically required by this Note or any other Loan Document), filing of suit and diligence in collecting this Note or enforcing any of the security herefor; (b) agree to any substitution, subordination, exchange or release of any security or any party primarily or secondarily liable hereon; (c) agree that the holder hereof shall not be required first to institute suit or exhaust its remedies hereon against the Borrower or others liable or to become liable hereon or to perfect or enforce its rights against them or any security herefor; (d)

-4-

consent to any extensions or postponements of time of payment of this Note and to any partial payments, before or after maturity, and to any other indulgences with respect hereto, without notice thereof to any of them; and (e) submit (and waive all rights to object) to non-exclusive personal jurisdiction in the State of Maryland and venue in the county in which payment is to be made as specified in the first paragraph of this Note, for the enforcement of any and all obligations under the Loan Documents; (f) waive the benefit of all homestead and similar exemptions as to this Note; (g) agree that their liability under this Note shall not be affected or impaired by any determination that any security interest or lien taken by the Lender to secure this Note is invalid or unperfected; and (h) subordinate any and all rights against the Borrower and any of the security for the payment of this Note, whether by subrogation, agreement or otherwise, until this Note is paid in full.

A determination that any provision of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and the determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances. This Note may not be amended except in a writing specifically intended for such purpose and executed by the party against whom enforcement of the amendment is sought. The terms, provisions, covenants and conditions hereof shall be binding upon the Borrower and the heirs, devisees, representatives, successors and assigns of the Borrower. Captions and headings in this Note are for convenience only and shall be disregarded in construing it.

This Note shall be governed by the laws of the District of Columbia (without regard to any conflict of laws principles) and applicable United States federal law.

Payment of this Note is secured by the Deed of Trust and the other Loan Documents. All of the agreements, conditions, covenants, provisions and stipulations contained in the Deed of Trust and the other Loan Documents which are to be kept and performed by Borrower are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein, and Borrower covenants and agrees to keep and perform them, or cause them to be kept and performed, strictly in accordance with their terms.

Lender may sell this Loan or any undivided ownership or participation interest in the Loan and disclose in confidence such financial and other information with respect to the Borrower, the Loan, this Note, any guarantor, and/or the collateral, or any portion thereof, which Lender may deem necessary in connection with such sale or participation. The Borrower shall execute, acknowledge and deliver any and all instruments reasonably requested by Lender in connection with the foregoing.

The Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no oral agreements between the parties.

IN WITNESS WHEREOF, Borrower, intending to be legally bound hereby, has duly executed this Note under seal on the day and year first above written.

WITNESS:

BORROWER:

K STREET, LLC, a District of Columbia limited liability company

By: _____ (SEAL)
Name: HABTE ISEQUAR
Title: MANAGER

[CORPORATE SEAL]

_____ )
                           )   ss:
COUNTY OF                  )

    I HEREBY CERTIFY that on this __ day of _____, 2018, before me, the subscriber, a Notary Public in and for the jurisdiction aforesaid, personally appeared _____ and _____ in said jurisdiction, the _____ of K STREET, LLC, a District of Columbia limited liability company, personally well known to me (or satisfactorily proven) to be the person who executed the foregoing instrument; and, in such capacity, being first duly authorized, acknowledged that he executed the foregoing instrument for the purposes therein contained, and delivered the same as such for and on behalf of said corporation.

    WITNESS my hand and Notarial Seal the year and day first above written.

_____
Notary Public

My Commission Expires: _____



**EXHIBIT**
C

# FIRST LEASEHOLD DEED OF TRUST
## WITH ABSOLUTE ASSIGNMENT OF LEASES AND RENTS,
### SECURITY AGREEMENT AND FIXTURE FILING

The maximum aggregate amount of principal to be secured at any one time under this Deed of Trust is $6,300,000.

THIS IS A REFINANCE DEED OF TRUST, REFINANCING THE DEEDS OF TRUST RECORDED ON OCTOBER 29, 2014, AS INSTRUMENT NUMBER 2014099901, AND ON APRIL 25, 2017, AS INSTRUMENT NUMBER 2017045205.

Name of the Beneficiary                  Old Line Bank
Secured by this Deed of Trust:

Address to which                         Old Line Bank
communications to the                    1575 Pointer Ridge Place
Beneficiary may be                       Bowie, Maryland 20116
mailed or delivered:                     Attention: Tom Herman,
                                         Senior Vice President

THIS FIRST LEASEHOLD DEED OF TRUST WITH ABSOLUTE ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING ("Deed of Trust"), is made as of June 25, 2018, by K STREET, LLC, a District of Columbia limited liability company, having an address at 1610 11th Street, NW, #4A, Washington, DC 20001 ("Grantor"), to M. JOHN MILLER, an individual, and JAMES CORNELSEN, an individual, either of whom may act, each having an address at c/o Old Line Bank, 1575 Pointer Ridge Place, Bowie, Maryland 20116 (collectively, *"Trustee"*, whether one or more), as Trustee, for the benefit of OLD LINE BANK (together with its successors and assigns, hereinafter referred to as *"Beneficiary"*).

Grantor and Beneficiary (the *"Lender"*) have entered into a Loan Agreement dated as of the date hereof (as amended, modified, restated, consolidated or supplemented from time to time, the *"Loan Agreement"*) pursuant to which the Lender is making a secured loan to Grantor in the aggregate original principal amount of up to SIX MILLION THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($6,300,000.00) (the *"Loan"*).

Capitalized terms used herein without definition are used as defined in the Loan Agreement. The Loan is evidenced by one or more Notes, dated the date hereof, made by Grantor to the order of the Lender in the aggregate principal amount of SIX MILLION THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($6,300,000.00) (as the same may be amended, modified, restated, severed, consolidated, renewed, replaced, or supplemented from time to time, individually or collectively as the context requires, the *"Note"*).

To secure the payment of the Note and all sums which may or shall become due thereunder or under any of the other documents evidencing, securing or executed in connection

1

with the Loan (the Note, this Deed of Trust, the Loan Agreement and such other documents, as any of the same may, from time to time, be modified, amended or supplemented, being hereinafter collectively referred to as the *"Loan Documents"),* including (i) the payment of interest and other amounts which would accrue and become due but for the filing of a petition in bankruptcy (whether or not a claim is allowed against Grantor for such interest or other amounts in any such bankruptcy proceeding) or the operation of the automatic stay under Section 362(a) of Title 11 of the United States Code (the *"Bankruptcy Code"),* and (ii) the costs and expenses of enforcing any provision of any Loan Document (all such sums being hereinafter collectively referred to as the *"Debt"),* Grantor has given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, warranted, pledged, assigned and hypothecated and by these presents does hereby give, transfer, grant, bargain, sell, alien, enfeoff, convey, confirm, warrant, pledge, assign and hypothecate unto Trustee, in trust for the benefit of Beneficiary on behalf of the Lender, **WITH POWER OF SALE**, Grantor's leasehold interest pursuant to the Ground Lease (as defined below) in and to (i) the land described in Exhibit A (the *"Premises"),* and (ii) the buildings, structures, fixtures and other improvements now or hereafter located thereon (the *"Improvements");*

TOGETHER WITH: all right, title, interest and estate of Grantor now owned, or hereafter acquired, in and to the following property, rights, interests and estates (the Premises, the Improvements, and the property, rights, interests and estates hereinafter described are. collectively referred to herein as the *"Trust Property"):*

(a) all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements; and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof; and all the estates, rights, titles, interests, dower and rights of dower, courtesy and rights of courtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Grantor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(b) all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including all heating, air conditioning, plumbing, lighting, communications and elevator fixtures), inventory, materials, supplies and other articles of personal property and accessions thereof (including, without limitation, if applicable, machinery; signs; artwork; office furnishings and equipment; partitions and screens; generators, boilers, compressors and engines; fuel; water and other pumps and tanks; irrigation lines and sprinklers; refrigeration equipment; pipes and plumbing; elevators and escalators; sprinkler systems and other fire extinguishing machinery, and equipment; heating, incinerating, ventilating, air conditioning and air cooling ducts, machinery, equipment and systems; gas and electric machinery and equipment; facilities used to provide utility services; laundry, drying, dishwashing and garbage disposal machinery or equipment; communication apparatus, including television, radio, music, and cable antennae and systems; floor coverings, rugs, carpets, window coverings, blinds, awnings, shades, curtains,

drapes and rods; screens, storm doors and windows; stoves, refrigerators, dishwashers and other installed appliances; attached cabinets; trees, plants and other items of landscaping; motorized, manual, mechanical or other buses, boats, aircrafts and vehicles of any nature whatsoever; visual and electronic surveillance systems and other security systems; elevators; escalators; telecommunications equipment including telephones, switchboards, exchanges, wires and phone jacks; maintenance equipment, golf carts, pro shop merchandise, beds, bureaus, chests, armoires, tables, chairs, mirrors, desks, wall coverings, clocks, lamps; kitchen, restaurant, bar, lounge, public room, public area, and other operating or specialized equipment, including menus, dishes, flatware, dishware, glassware, cooking utensils, tables, refrigerating units, microwave equipment, ovens, timers; food and beverages; alcohol; cleaning materials other similar items; swimming pool heaters and equipment; recreational equipment and maintenance supplies; clubhouse equipment, furnishings and supplies, including lockers and sporting equipment; and health and recreational facilities; and linens, and all other persona! property items of every kind used or useful in connection with hotels, restaurants, bars, lounges, conference rooms, auditoriums and other areas of the Trust Property), renewals and replacements thereof and substitutions therefor, and other property of every kind and nature, tangible or intangible, owned by Grantor, or in which Grantor has or shall have an interest, now or hereafter located upon the Premises or the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the *"Equipment")*, including any leases of, deposits in connection with, and proceeds of any sale or transfer of any of the foregoing, and the right, title and interest of Grantor in and to any of the Equipment that may be subject to any "security interest" as defined in the Uniform Commercial Code, as in effect in the State where the Trust Property is located (the *"UCC")*, superior in lien to the lien of this Deed of Trust;

(c)    all awards or payments, including interest thereon, that may heretofore or hereafter be made with respect to the Premises or the Improvements, whether from the exercise of the right of eminent domain or condemnation (including any transfer made in lieu of or in anticipation of the exercise of such right), or for a change of grade, or for any other in jury to or decrease in the value of the Premises or Improvements;

(d)    all Leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises or the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the *"Leases")* and all rents, rent equivalents, moneys payable as damages (including payments by reason of the rejection of a Lease in a Bankruptcy Proceeding or in lieu of rent or rent equivalents), royalties (including all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Grantor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements, including all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of the Premises or the Improvements, or rendering of services by Grantor or any of its agents or employees, and proceeds, if any, from business interruption or

3

other Joss of income insurance (hereinafter collectively referred to as the *"Rents"),* together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(e)     all proceeds of and any unearned premiums on any insurance policies covering the Trust Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Trust Property;

(f)     the right, in the name and on behalf of Grantor, to appear in and defend any action or proceeding brought with respect to the Trust Property and to commence any action or proceeding to protect the interest of Beneficiary in the Trust Property;

(g)     all accounts (including reserve accounts), escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the UCC, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, surveys, title insurance policies, permits, consents, licenses (including; without limitation, any permits or licenses related to the sale of alcoholic beverages), management agreements, contract rights (including any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair or other work upon the Trust Property and including all property and asset management agreements, license agreements, reservation agreements, franchise agreements and comfort letters with any franchisor or any property manager and any assignments or assumptions of any of the foregoing (collectively, the *"Management Agreements"),* approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Trust Property) and causes of action that now or hereafter relate to, are derived from or are used in connection with the Trust Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the *"Intangibles");*

(h)     that certain Ground Lease dated as of the date hereof by and between VALOR 1634 LLC, a District of Columbia limited liability company, (together with its successors and assigns, the *"Ground Lessor"),* as landlord, and Grantor, as tenant, (as amended and assigned, the *"Ground Lease"),* a memorandum of which was dated June 25, 2018, among the Land Records of the District of Columbia immediately prior hereto, and the leasehold interest granted thereby in as more particularly described therein and all modifications, extensions and renewals of the Ground Lease and all credits, deposits (including, without limitation, any deposits of cash or securities or any other property which may be held to secure Grantor's performance of its obligations under the Ground Lease), options, privileges and rights of Grantor as tenant under the Ground Lease, including, but not limited to, any purchase rights or rights, if any, to renew or extend the Ground Lease for a succeeding term or terms, and any right or rights to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Ground Lease; except that notwithstanding the foregoing, Grantor is hereby permitted, at the sufferance and sole discretion of Beneficiary, and is hereby granted by Beneficiary, a license to act as tenant under the Ground Lease and to exercise all options, privileges and rights of tenant under the Ground Lease; and

4

(i)      all proceeds, products, offspring, rents and profits from any of the foregoing, including those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

Without limiting the generality of any of the foregoing, in the event that a case under the Bankruptcy Code is commenced by or against Grantor, pursuant to Section 552(b)(2) of the Bankruptcy Code, the security interest granted by this Deed of Trust shall automatically extend to all Rents acquired by the Grantor after the commencement of the case and shall constitute cash collateral under Section 363(a) of the Bankruptcy Code.

**TO HA VE AND TO HOLD** the Trust Property unto and to the use and benefit of Beneficiary and its successors and assigns, forever;

**PROVIDED, HOWEVER,** these presents are upon the express condition that, if Grantor shall well and truly pay to Beneficiary and the Lender the Debt at the time and in the manner provided in the Loan Documents and shall well and truly abide by and comply with each and every covenant and condition set forth in the Loan Documents in a timely manner, these presents and the estate hereby granted shall cease, terminate and be void;

**AND** Grantor represents and warrants to and covenants and agrees with Beneficiary and the Lender as follows:

## PART I - GENERAL PROVISIONS

1. **Payment of Debt and Incorporation of Covenants, Conditions and Agreements.** Grantor shall pay the Debt at the time and in the manner provided in the Loan Documents. All the covenants, conditions and agreements contained in the Loan Documents are hereby made a part of this Deed of Trust to the same extent and with the same force as if fully set forth herein. Without limiting the generality of the foregoing, Grantor agrees to insure, repair, maintain and restore damage to the Trust Property, pay Taxes and Other Charges, and comply with Legal Requirements, in accordance with the Loan Agreement.

2. **Leases and Rents.**

(a)      Grantor does hereby absolutely and unconditionally assign to Beneficiary, on behalf of the Lender, all of Grantor's right, title and interest in all current and future Leases and Rents, it being intended by Grantor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Such assignment shall not be construed to bind Beneficiary or any Lender to the performance of any of the covenants or provisions contained in any Lease or otherwise impose any obligation upon Beneficiary or any Lender. Nevertheless, subject to the terms of this Section 2, Beneficiary grants to Grantor (on behalf of the Lender) a revocable license to operate and manage the Trust Property and to collect, retain, use and enjoy the Rents subject to the requirements of the Loan Agreement. Upon an Event of Default, without the need for notice or demand, the license granted to Grantor herein shall automatically be revoked, and Beneficiary (on behalf of the Lender) shall immediately be entitled to possession of all Rents, the Deposit Account (including all

5

Subaccounts thereof) and all Rents collected thereafter (including Rents past due and unpaid), whether or not Beneficiary enters upon or takes control of the Trust Property. Grantor hereby grants and assigns to Beneficiary (on behalf of the Lender) the right, at its option, upon revocation of the license granted herein, to enter upon the Trust Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of such license may be applied toward payment of the Debt in such priority and proportions as Beneficiary in its sole discretion shall deem proper.

(b)    Grantor shall not enter into, modify, amend, cancel, terminate or renew any Lease except as provided in the Ground Lease.

**3. Use of Trust Property.** Grantor shall not (i) initiate, join in, acquiesce in or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Trust Property, (ii) change the use of the Trust Property, (iii) permit or suffer to occur any waste on or to the Trust Property or (iv) take any steps to convert the Trust Property to a condominium or cooperative form of ownership. If under applicable zoning provisions the use of the Trust Property is or shall become a nonconforming use, Grantor shall not cause or permit such nonconforming use to be discontinued or abandoned without the consent of Beneficiary.

**4. Transfer or Encumbrance of the Trust Property.**

(a)    Grantor acknowledges that (i) Beneficiary and the Lender have examined and relied on the creditworthiness and experience of the principals of Grantor in owning and operating properties such as the Trust Property in agreeing to make the Loan, (ii) Beneficiary and the Lender will continue to rely on Grantor's ownership of the Trust Property as a means of maintaining the value of the Trust Property as security for the Debt, and (iii) Beneficiary and the Lender have a valid interest in maintaining the value of the Trust Property so as to ensure that, should Grantor default in the repayment of the Debt, Beneficiary and the Lender can recover the Debt by a sale of the Trust Property. Grantor shall not sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Trust Property or any part thereof, or suffer or permit any Transfer to occur, other than to a Permitted Transfer.

(b)    Neither Beneficiary nor any Lender shall be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon Transfer in violation of this Section 4.  This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Trust Property. (and every other Transfer) regardless of whether voluntary or not. Any Transfer made in contravention of this Section 4 shall be null and void and of no force and effect. Grantor agrees to bear and shall pay or reimburse Beneficiary or such Lender on demand for all reasonable expenses (including reasonable attorneys' fees and disbursements, title search costs and title insurance endorsement premiums) incurred by Beneficiary or such Lender in connection with the review, approval and documentation of any requested Transfer.

**5. Changes in Laws Regarding Taxation.** If any law is enacted or adopted or amended after the date of this Deed of Trust which deducts the Debt from the value of the Trust Property

for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Beneficiary's interest in the Trust Property, Grantor will pay such tax, with interest and penalties thereon, if any. If Beneficiary or any Lender is advised by its counsel that the payment of such tax or interest and penalties by Grantor would be unlawful, taxable to Beneficiary or such Lender or unenforceable, or would provide the basis for a defense of usury, then Beneficiary shall have the option, by notice of not Jess than ninety (90) days, upon the written instruction of the Lender, to declare the Debt immediately due and payable.

6. **No Credits on Account of the Debt.** Grantor shall not claim or demand or be entitled to any credit on account of the Debt for any part of the Taxes or Other Charges assessed against the Trust Property, and no deduction shall otherwise be made or claimed from the assessed value of the Trust Property for real estate tax purposes by reason of this Deed of Trust or the Debt. If such claim, credit or deduction shall be required by law, Beneficiary shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

7. **Further Acts, Etc.** Grantor shall, at its sole cost, perform, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, transfers and assurances as Beneficiary shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Beneficiary the property and rights hereby mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Grantor may be or may hereafter become bound to convey or assign to Beneficiary, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust, or for filing, registering or recording this Deed of Trust. Upon foreclosure, the appointment of a receiver or any other relevant action, Grantor shall, at its sole cost, cooperate fully and completely to effect the assignment or transfer of any license, permit, agreement or any other right necessary or useful to the operation of the Trust Property. Grantor grants to Beneficiary an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Beneficiary at law and in equity, including such rights and remedies available to Beneficiary pursuant to this Section.

8. **Recording of Deed of Trust, Etc.** Grantor forthwith upon the execution and delivery of this Deed of Trust and thereafter, from time to time, shall cause this Deed of Trust, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Trust Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Beneficiary and the Lender in, the Trust Property. Grantor shall pay all filing, registration or recording fees, all expenses incident to the preparation, execution and acknowledgment of and all federal, state, county and municipal, taxes, duties, imposts, documentary stamps, assessments and charges arising out of or in connection with the execution and delivery of, this Deed of Trust, any Deed of Trust supplemental hereto, any security instrument with respect to the Trust Property or any instrument of further assurance, except where prohibited by law so to do. Grantor shall hold harmless and indemnify Beneficiary, the Lender and their respective successors and assigns, against any liability incurred by reason of the imposition of any tax on the making or recording of this Deed of Trust.

7

9. **Right to Cure Defaults.** Upon the occurrence of any Event of Default, Beneficiary may (on behalf of, and for the account of, the Lender ), but without any obligation to do so and without notice to or demand on Grantor and without releasing Grantor from any obligation hereunder, pay and/or perform any obligations of Grantor that have given rise to a Default in such manner and to such extent as Beneficiary may deem necessary to protect the security hereof. Beneficiary (on behalf of the Lender) is authorized to enter upon the Trust Property for such purposes or appear in, defend or bring any action or proceeding to protect its interest in the Trust Property or to foreclose this Deed of Trust or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest thereon at the Default Rate for the period after notice from Beneficiary that such cost or expense was incurred to the date of payment to Beneficiary, shall constitute a portion of the Debt, shall be secured by this Deed of Trust and the other Loan Documents and shall be due and payable to Beneficiary (or, to the extent the Beneficiary has been reimbursed by the Lender, the Lender) upon demand.

10. **Remedies.**

(a)     Upon the occurrence of any Event of Default, Beneficiary may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Grantor and in and to the Trust Property, by Beneficiary itself or otherwise, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Beneficiary may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Beneficiary and the Lender:

(i)     declare the entire Debt to be immediately due and payable;

(ii)     institute a proceeding or proceedings, judicial or nonjudicial, to the extent permitted by law, by advertisement or otherwise, for the complete foreclosure of this Deed of Trust, in which case the Trust Property may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(iii)     with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Deed of Trust for the portion of the Debt then due and payable, subject to the continuing lien of this Deed of Trust for the balance of the Debt not then due;

(iv)     sell for cash or upon credit the Trust Property and all estate, claim, demand, right, title and interest of Grantor therein and rights of redemption thereof, pursuant to the power of sale, to the extent permitted by law, or otherwise, atone or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(v)     institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein or in any other Loan Document;

8

(vi)    recover judgment on the Note either before, during or after any proceeding for the enforcement of this Deed of Trust;

(vii)    apply for the appointment of a trustee, receiver, liquidator or conservator of the Trust Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Grantor or of any person, firm or other entity liable for the payment of the Debt;

(viii)    enforce Beneficiary's and the Lender' interest in the Leases and Rents and enter into or upon the Trust Property, either personally or by its agents, nominees or attorneys and dispossess Grantor and its agents and employees therefrom, and thereupon Beneficiary (on behalf of, and for the account of, the Lender) may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with the Trust Property and conduct the business thereat; (B) complete. Any construction on the Trust Property in such manner and form as Beneficiary deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Trust Property; (D) exercise all rights and powers of Grantor with respect to the Trust Property, whether in the name of Grantor or otherwise, including the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive Rents; and (E) apply the receipts from the Trust Property to the payment of the Debt, after deducting therefrom all expenses (including reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, insurance and other charges in connection with the Trust Property, as well as just and reasonable compensation for the services of Beneficiary, the Lender and their respective counsel, agents and employees;

(ix)    require Grantor to pay monthly in advance to Beneficiary, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of any portion of the Trust Property occupied by Grantor, and require Grantor to vacate and surrender possession of the Trust Property to Beneficiary or to such receiver, and, in default thereof, evict Grantor by summary proceedings or otherwise; or

(x)    pursue such other rights and remedies as may be available at law or in equity or under the UCC, including the right to receive and/or establish a lock box for all Rents and proceeds from the Intangibles and any other receivables or rights to payments .of Grantor relating to the Trust Property.

In the event of a sale, by foreclosure or otherwise, of less than all of the Trust Property, this Deed of Trust shall continue as a lien on the remaining portion of the Trust Property.

(b)    The proceeds of any sale made under or by virtue of this Section 10, together with any other sums which then may be held by Beneficiary under this Deed of Trust, whether under the provisions of this Section 10 or otherwise, shall be applied by Beneficiary to the payment of the Debt in such priority and proportion as Beneficiary (on behalf of the Lender) in its sole discretion shall deem proper.

(c)     Beneficiary may adjourn from time to time any sale by it to be made under or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable law, Beneficiary, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)     Upon the completion of any sale or sales pursuant hereto, Beneficiary, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold, without any representation or warranty on the part of Beneficiary or any Lender. Beneficiary is hereby irrevocably appointed the true and lawful attorney of Grantor, in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Trust Property and rights so sold and for that purpose Beneficiary may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any sale or sales made under or by virtue of this Section 10, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Grantor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Grantor and against any and all persons claiming or who may claim the same, or any part thereof, from, through or under Grantor.

(e)     Upon any sale made under or by virtue of this Section 10, whether made under a power of sale or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Trust Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Beneficiary (on behalf of the Lender) is authorized to deduct under this Deed of Trust or any other Loan Document.

(f)     No recovery of any judgment by Beneficiary and no levy of an execution under any judgment upon the Trust Property or upon any other property of Grantor shall affect in any manner or to any extent the lien of this Deed of Trust upon the Trust Property or any part thereof, or any liens, rights, powers or remedies of Beneficiary or the Lender hereunder, but such liens, rights, powers and remedies of Beneficiary and the Lender shall continue unimpaired as before.

(g)     Beneficiary may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in this Section 10 at any time before the conclusion thereof, as determined in Beneficiary's sole discretion and without prejudice to Beneficiary or the Lender.

(h)     Beneficiary and the Lender may resort to any remedies and the security given by this Deed of Trust or in any other Loan Document in whole or in part, and in such

portions and in such order as determined by Beneficiary's sole discretion. No such action shall in any way be considered a waiver of any rights, benefits or remedies evidenced or provided by any Loan Document. The failure of Beneficiary or the Lender to exercise any right, remedy or option provided in any Loan Document shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by any Loan Document. No acceptance by Beneficiary or any Lender of any payment after the occurrence of any Event of Default and no payment by Beneficiary or any Lender of any obligation for which Grantor is liable hereunder shall be deemed to waive or cure any Event of Default, or Grantor's liability to pay such obligation. No sale of all or any portion of the Trust Property, no forbearance on the part of Beneficiary, and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Beneficiary or any Lender to Grantor, shall operate to release or in any manner affect the interest of Beneficiary and the Lender in the remaining Trust Property or the liability of Grantor to pay the Debt. No waiver by Beneficiary or any Lender shall be effective unless it is in writing and then only to the extent specifically stated. All costs and expenses of Beneficiary and the Lender in exercising its rights and remedies under this Section 10 (including reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Grantor immediately upon notice from Beneficiary or the applicable Lender, with interest at the Default Rate for the period after notice from Beneficiary or the applicable Lender, and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Deed of Trust.

(i)     The interests and rights of Beneficiary and the Lender under the Loan Documents shall not be impaired by any indulgence, including (i) any renewal, extension or modification which Beneficiary may grant with respect to any of the Debt, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Beneficiary and the Lender may grant with respect to the Trust Property or any portion thereof or (iii) any release or indulgence granted to any maker, endorser, guarantor or surety of any of the Debt.

**11. Right of Entry.** In addition to any other rights or remedies granted under this Deed of Trust, Beneficiary, the Lender and their respective agents shall have the right to enter and inspect the Trust Property at any reasonable time during the term of this Deed of Trust. The cost of such inspections or audits shall be borne by Grantor should Beneficiary determine that an Event of Default exists, including the cost of all follow up or additional investigations or inquiries deemed reasonably necessary by Beneficiary or such Lender. The cost of such inspections, if not paid for by Grantor following demand, may be added to the principal balance of the sums due under the Note and this Deed of Trust and shall bear interest thereafter until paid at the Default Rate.

**12. Security Agreement.** This Deed of Trust is both a real property deed of trust and a "security agreement" within the meaning of the UCC. The Trust Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Grantor in the Trust Property. Grantor by executing and delivering this Deed of Trust has granted and hereby grants to Beneficiary (on behalf of the Lender), as security for the Debt, a security interest in the Trust Property to the full extent that the Trust Property may be subject to the UCC (such portion of the Trust Property so subject to the UCC being called in this Section the *"Collateral"*). This Deed of Trust shall also constitute a "fixture filing" for the purposes of the

UCC. As such, this Deed of Trust covers all items of the Collateral that are or are to become fixtures. Information concerning the security interest herein granted may be obtained from the parties at the addresses of the parties set forth in the first paragraph of this Deed of Trust. If an Event of Default shall occur, Beneficiary, in addition to any other rights and .remedies which it or the Lender may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the UCC, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Beneficiary may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Beneficiary, Grantor shall at its expense assemble the Collateral and make it available to Beneficiary at a convenient place acceptable to Beneficiary. Grantor shall pay to Beneficiary and the Lender on demand any and all expenses, including reasonable attorneys' fees and disbursements, incurred or paid by Beneficiary or any Lender in protecting the interest in the Collateral and in enforcing the rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Beneficiary with respect to the Collateral, sent to Grantor in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Grantor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Beneficiary to the payment of the Debt in such priority and proportions as Beneficiary in its sole discretion shall deem proper. In the event of any change in name, identity or structure of Grantor, Grantor shall notify Beneficiary thereof and promptly after request shall execute, file and record such UCC forms as are necessary to maintain the priority of Beneficiary's and the Lender' lien upon and security interest in the Collateral, and shall pay all expenses and fees in connection with the filing and recording thereof. If Beneficiary shall require the filing or recording of additional UCC forms or continuation statements, Grantor shall, promptly after request, execute, file and record such. UCC forms or continuation statements as Beneficiary shall deem necessary, and shall pay all expenses and fees in connection with the filing and recording thereof, it being understood and agreed, however, that no such additional documents shall increase Grantor's obligations or decrease Grantor's rights under the Loan Documents. This financing statement shall remain in effect as a fixture filing until this Deed of Trust is released or satisfied of record. Grantor hereby irrevocably appoints Beneficiary as its attorney-in-fact, coupled with an interest, to file with the appropriate public office on its behalf any financing or other statements signed only by Beneficiary, as secured party, in connection with the Collateral covered by this Deed of Trust.

13. **Actions and Proceedings.** Beneficiary (on behalf of the Lender) has the right to appear in and defend any action or proceeding brought with respect to the Trust Property and to bring any action or proceeding, in the name and on behalf of Grantor, which Beneficiary (on behalf of the Lender), in its sole discretion, decides should be brought to protect its interest in the Trust Property. Beneficiary shall, at its option, be subrogated to the lien of any deed of trust or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

14. **Marshalling and Other Matters.** Grantor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Trust Property or any part thereof or any interest therein. Further, Grantor hereby expressly

waives any and all rights of redemption from sale under any order or decree of foreclosure of this Deed of Trust on behalf of Grantor, and on behalf of each and every person acquiring any interest in or title to the Trust Property subsequent to the date of this Deed of Trust and on behalf of all persons to the extent permitted by applicable law. The lien of this Deed of Trust shall be absolute and unconditional and shall not in any manner be affected or impaired by any acts or omissions whatsoever of Beneficiary or any Lender and, without limiting the generality of the foregoing, the lien hereof shall not be impaired by (i) any acceptance by Beneficiary and the Lender of any other security for any portion of the Debt, (ii) any failure, neglect or omission on the part of Beneficiary to realize upon or protect any portion of the Debt or any collateral security therefor or (iii) any release ( except as to the property released), sale, pledge, surrender, compromise, settlement, renewal, extension, indulgence, alteration, changing, modification or disposition of any portion of the Debt or of any of the collateral security therefor; and Beneficiary may foreclose, or exercise any other remedy available to Beneficiary and the Lender under other Loan Documents without first exercising or enforcing any of its remedies under this Deed of Trust, and any exercise of the rights and remedies of Beneficiary and the Lender hereunder shall not in any manner impair the Debt or the liens of any other Loan Document or any of Beneficiary' s and the Lender' rights and remedies thereunder.

     **15.**  **Notices.**  All notices, consents, approvals and requests required or permitted hereunder shall be in writing, and shall be sent, and shall be deemed effective, as provided in the Loan Agreement.

     **16. Inapplicable Provisions.**  If any term, covenant or condition of this Deed of Trust is held to be invalid, illegal or unenforceable in any respect, this Deed of Trust shall be construed without such provision.

     **17.**  **Headings.**  The Section headings in this Deed of Trust are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

     **18.**  **Duplicate Originals.**  This Deed of Trust may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

     **19.**  **Definitions.**  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Deed of Trust may be used interchangeably in singular or plural form; and the word *"Grantor"* shall mean "each Grantor and any subsequent owner or owners of the Trust Property or any part thereof or any interest therein," the word *"Beneficiary"* shall mean "Beneficiary and any successor administrative agent for the Lender," the words *"Trust Property"* shall include any portion of the Trust Property and any interest therein, the word *"including"* means "including but not limited to" and the words *"attorneys' fees"* shall include any and all attorneys' fees, paralegal and law clerk fees, including fees at the pre-trial, trial and appellate levels incurred or paid by Beneficiary or any Lender in protecting its interest in the Trust Property and Collateral and enforcing its rights hereunder.

**20. Homestead.** Grantor hereby waives and renounces all homestead and exemption rights provided by the Constitution and the laws of the United States and of any state, in and to the Trust Property as against the collection of the Debt, or any part thereof.

**21. Assignments.** Beneficiary shall have the right to assign or transfer its rights under this Deed of Trust to any successor administrative agent for the Lender or to any assignee of the interests of all Lender in and to the Debt, without limitation. Any assignee or transferee shall be entitled to all the benefits afforded Beneficiary under this Deed of Trust.

**22. Waiver of Jury Trial.** TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH OF GRANTOR AND, BY ACCEPTING THIS DEED OF TRUST, BENEFICIARY HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY AND WAIVES ANY RIGHT TO TRIAL BY JURY FULL Y TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS DEED OF TRUST OR ANY OTHER LOAN DOCUMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH OF GRANTOR AND, BY ACCEPTING THIS DEED OF TRUST, BENEFICIARY IS INTENDED TO ENCOMPASS INDIVIDUALL Y EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF BENEFICIARY AND GRANTOR IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

**23. Consents.** Any consent or approval by Beneficiary or any Lender in any single instance shall not be deemed or construed to be Beneficiary's or such Lender's consent or approval in any like matter arising at a subsequent date, and the failure of Beneficiary or any Lender to promptly exercise any right, power, remedy, consent or approval provided herein or at law or in equity shall not constitute or be construed as a waiver of the same nor shall Beneficiary or any Lender be estopped from exercising such right, power, remedy, consent or approval at a later date. Any consent or approval requested of and granted by Beneficiary or any Lender pursuant hereto shall be narrowly construed to be applicable only to Grantor and the matter identified in such consent or approval and no third party shall claim any benefit by reason thereof, and any such consent or approval shall not be deemed to constitute Beneficiary or any Lender aventurer or partner with Grantor nor shall privity of contract be presumed to have been established with any such third party. If Beneficiary deems it to be in its best interest to retain assistance of persons, firms or corporations (including attorneys, title insurance companies, appraisers, engineers and surveyors) with respect to a request for consent or approval, Grantor shall reimburse Beneficiary for all costs reasonably incurred in connection with the employment of such persons, firms or corporations.

**24. Loan Repayment.** Provided no Event of Default exists, this Deed of Trust will be satisfied and discharged of record by Beneficiary prior to the Maturity Date only in accordance with the terms and provisions set forth in the Loan Agreement.

**25.** <u>**Governing Law.**</u> To the fullest extent permitted by the law, the law of the District of Columbia (without regard to conflict of law provisions thereof) shall govern all matters relating to this Deed of Trust and the other Loan Documents and all of the indebtedness or obligations arising hereunder or thereunder. All provisions of the Loan Agreement incorporated herein by reference shall be governed by, and construed in accordance with, the laws of the District of Columbia, as set forth in the governing law provision of the Loan Agreement.

**26.** <u>**Trustee; Successor Trustee.**</u> Trustee shall not be liable for any error of judgment or act done by Trustee, or be otherwise responsible or accountable under any circumstances whatsoever, except if the result of Trustee's gross negligence or willful misconduct. Trustee shall not be personally liable in case of entry by him or anyone acting by virtue of the powers herein granted him upon the Trust Property for debts contracted or liability or damages or damages incurred in the management or operation of the Trust Property. Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by him hereunder or believed by him to be genuine. Trustee shall be entitled to reimbursement for actual expenses incurred by him in the performance of his duties hereunder and to reasonable compensation for such of his services hereunder as shall be rendered. Grantor will, from time to time, reimburse Trustee for and save and hold him harmless from and against any and all loss, cost, liability, damage and reasonable expense whatsoever incurred by him in the performance of his duties. In the event of any sale made under or by virtue of the exercise of remedies provided for under this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or a judgment or decree of foreclosure and sale, the Trustee shall be entitled to retain as compensation a commission equal to five percent (5%) of the gross proceeds of such sale or the maximum amount allowed by the court having jurisdiction over the sale, whichever amount is less. Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of the exercise of remedies provided for under this Deed of Trust, whether to be made under the power of sale therein granted or under or by virtue of judicial proceedings or a judgment or decree of foreclosure and sale, the Trustee shall be entitled to receive as compensation from the Grantor a commission equal to one percent (1%) of the total amount then due on account of the Debt and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Debt. The commissions provided for in this section and in the preceding section shall not be cumulative. All monies received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other monies (except to the extent required by law) and Trustee shall be under no liability for interest on any monies received by him hereunder. Trustee may resign by giving of notice of such resignation in writing to Beneficiary. If Trustee shall die, resign or become disqualified from acting in the execution of this trust or shall fail or refuse to exercise the same when requested by Beneficiary or if for any or no reason and without cause Beneficiary shall prefer to appoint a substitute trustee to act instead of the original Trustee named herein, or any prior successor or substitute trustee, Beneficiary shall, without any formality or notice to Grantor or any other person, have full power to appoint a substitute trustee and, if Beneficiary so elects, several substitute trustees in succession who shall succeed to all the estate, rights, powers and duties of the aforenamed Trustee. Each appointment and substitution shall be evidenced by an instrument in writing to be recorded in the office in which the Deed of Trust is recorded, which

15

shall recite the parties to, and the book and page of record of, this Deed of Trust, and the description of the real property herein described, which instrument, executed and acknowledged by Beneficiary, shall (i) be conclusive proof of the proper substitution and appointment of such successor Trustee or Trustees, (ii) duly assign and transfer all the estates, properties, rights, powers and trusts of Trustee so ceasing to act and (iii) be notice of such proper substitution and appointment to all parties in interest. In addition, such Trustee ceasing to act shall duly assign, transfer, and deliver any of the property and monies held by Trustee to the successor Trustee so appointed in its or his place. The Trustee may act in the execution of this trust and may authorize one or more parties to act on his behalf to perform the ministerial functions required of him hereunder, including without limitation, the transmittal and posting of any notices and it shall not be necessary for any Trustee to be present in person at any foreclosure sale.

27.  **Ground Lease.**  Grantor represents, warrants and covenants with Beneficiary as follows:

(a)    Recording; Modification.  A memorandum of the Ground Lease was recorded with the land records of the District of Columbia immediately prior hereto. The Ground Lease permits the interest of Grantor in the Ground Lease to be encumbered by this Deed of Trust pursuant to Section 14.1 of the Ground Lease.  The Ground Lease has not been further amended, other than by written instruments which have been delivered to Beneficiary or which have been executed in connection with this Deed of Trust.  Subject to Sections 18.16 of the Ground Lease, Grantor may not cancel, terminate, surrender or amend the Ground Lease without the prior written consent of Beneficiary.

(b)    Ground Lease Assignable.  Grantor's interest in the Ground Lease is assignable to Beneficiary in accordance with Section 12.2 of the Ground Lease. Grantor's interest in the Ground Lease is further assignable by Beneficiary, its successors and assigns in accordance with Article XII of the Ground Lease.

(c)    Default. As of the date hereof, the Ground Lease is in full force and effect and Grantor has not given or received any notice of default under the Ground Lease and to Grantor's knowledge, there is no existing condition which, but for the passage of time or the giving of notice, would constitute a default under the terms of the Ground Lease.

(d)    Notice. Upon Beneficiary's compliance with Section 14.8 of the Ground Lease, Section 14.3 of the Ground Lease requires the Ground Lessor to give notice to Beneficiary of any failure of Grantor to keep, observe or perform any of the terms of the Ground Lease required to be kept, observed or performed by Grantor. Pursuant to and in accordance with Section 14.6 of the Ground Lease, the Ground Lessor shall not accept a voluntary termination of the Ground Lease by Grantor without the prior written consent of Beneficiary.

(e)    Cure. Subject to and in accordance with Section 14.3 of the Ground Lease, Beneficiary is permitted the opportunity to cure any curable default of Grantor under the Ground Lease.

(f)  Term. The expiration of the Initial Term (as defined in the Ground Lease) of the Ground Lease is not less than fourteen (14) years beyond the Maturity Date (as defined in the Loan Agreement), as the same may be extended pursuant to Section 3.1 of the Ground Lease.

(g)  New Lease. Subject to and in accordance with Section 14.5 of the Ground Lease, the Ground Lessor is obligated to enter into a new lease with Beneficiary if the Ground Lessor terminates the Ground Lease because of an Event of Default (as defined in the Ground Lease) or if the Ground Lease is rejected or disaffirmed pursuant to a bankruptcy proceeding.

(h)  Insurance Proceeds. Under the terms of the Ground Lease, and the Loan Agreement, taken together, any proceeds of any insured casualty will be applied either (y) to the repair or restoration of all or part of the Property, with Beneficiary having the right to hold and disburse the proceeds as the repair or restoration progresses (provided that Beneficiary complies with the requirements for "Proceeds Trustee" as defined in the Ground Lease), or (z) to the payment of the outstanding principal balance of the Loan together with any accrued interest thereon, in accordance with Article IX of the Ground Lease.

i)  Subleasing. Subject to and in accordance with Section 12.5 of the Ground Lease, Grantor is permitted to enter into subleases for the Property.

## 28. Condemnation.

(a)  Notice. The Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

(b)  Assignment of Condemnation Awards. The Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any and all award or payment made with respect to any proceeding under the power of condemnation or eminent domain relating to the Property and initiated subsequent to the recordation of this Deed of Trust.

(c)  Prosecution - Diligence. The Grantor covenants and agrees to initiate its claim or claims for any such award or payment promptly, to prosecute the same diligently and in good faith and to cause the same to be collected and paid over to the Beneficiary, and the Grantor hereby irrevocably authorizes the Beneficiary, in the name of the Grantor or otherwise, to collect and receive any such award or payment and, in the event the Grantor fails to act or in the event any Default has occurred which has not been cured, to initiate and prosecute such claim or claims.

(d)  Application of Proceeds. All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Property, shall be applied by the

17

Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually incurred by the Beneficiary in connection with the collection of such award or payment, including without limitation, attorneys' fees and appraisal fees; (b) to the prepayment of the amount then due on account of the Debt, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Property, then the Beneficiary, in its sole discretion, may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed to the Grantor and the purpose for which they may be used by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of the Debt.

### 29. <u>Deposits for Taxes and Related Matters.</u>

(a)     At any time that an uncured Event of Default exists under this Deed of Trust or under any of the other Loan Documents, the Beneficiary, at its option to be exercised by thirty (30) days prior notice in writing to the Grantor or as otherwise required under the Loan Documents, may require the Grantor to deposit with the Beneficiary at the time of each payment under the Note, an additional amount determined by Beneficiary to be sufficient to accumulate no later than thirty (30) days prior to the due date thereof the sum required to discharge the Impositions.

(b)     Any amounts deposited with the Beneficiary pursuant to the provisions of this section are hereby pledged as additional security for the payment of the Debt. Any amounts deposited with the Beneficiary pursuant to the provisions of this section shall not be, nor be deemed to be, trust funds, nor shall they operate to curtail or reduce the Debt, and all such amounts may be commingled with the general funds of the Beneficiary. Such amounts shall be held by the Beneficiary without interest and applied to the payment of the applicable Impositions or, at the option of the Beneficiary, to the payment of such other Impositions in such order or priority as the Beneficiary shall determine, on or before the respective dates on which the same or any of them become delinquent. If one month prior to the due date of any of the aforementioned Impositions the amount then on deposit therefor shall not be sufficient for the payment in full of such amounts, the Grantor, within ten (10) days after demand, shall deposit the amount of the deficiency with the Beneficiary.

(c)     The Beneficiary shall not be liable for any failure to apply to the payment of the Impositions any amounts deposited with it pursuant to the provisions of this section unless the Grantor, while no Event of Default exists hereunder, shall have requested the Beneficiary in writing to make application of such deposits to the payment of particular Impositions and such request is accompanied by the bills therefor.

## PART II
## STATE-SPECIFIC PROVISIONS

29. <u>Conflicts with Part 1.</u> In the event of any conflict between the provisions of this Part II and any provision of Part 1, then the provisions of this Part II shall control.

**30.  Statutory Assignment.**  Section 2 of this Deed of Trust is hereby amended by adding the following clause (c) to the end thereof:

> "(c) Grantor hereby represents, warrants and agrees that the assignment of Leases and Rents set forth in this Section 2 constitutes an interest created by deed assigning an interest in rents or profits arising from property."

**31.  Fixture Filing.**  As to each portion of the Trust Property and all other collateral under this Deed of Trust which is or which hereafter becomes a "fixture" under applicable law, this Deed of Trust constitutes a fixture filing under Article 9 of the UCC, as amended or recodified from time to time. In that regard, the following information is provided:

| | |
|---|---|
| Name of Debtor: | K Street, LLC,<br>a District of Columbia limited liability company |
| File Number of Debtor: | ▮▮▮▮▮▮ |
| Address of Debtor: | K Street, LLC<br>1610 11th Street, NW, #4A<br>Washington, DC 20001<br>Attn: Habte Sequar<br><br>with a copy to: |
| Name of Secured Party: | Old Line Bank |
| Address of Secured Party: | 1575 Pointer Ridge Place<br>Bowie, Maryland 20116<br>Attn: Tom Herman<br><br>with a copy to:<br><br>Garth E. Beall, Esquire<br>McNamee Hosea<br>6411 Ivy Lane, Suite 200<br>Greenbelt, MD  20770 |

**32.  Aggregate Maximum Principal Secured.**  Notwithstanding anything to the contrary set forth herein, Grantor's obligations under this Deed of Trust are limited to the maximum aggregate principal amount of $6,300,000.

**33.  Release.**  If and when Grantor has paid all of the Debt, as the same becomes due and payable, and all of the covenants, warranties, undertakings and agreements in this Deed of Trust are kept and performed, and all obligations, if any, of Beneficiary for future advances have been terminated, then, and in that event only, all rights under this Deed of Trust shall terminate (

except to the extent expressly provided herein with respect to indemnifications, representations and warranties and other rights which are to continue following the release hereof), and the Trustee, upon request by Beneficiary, will provide a release of this Deed of Trust to Grantor. Grantor shall be responsible for the recordation of such release and payment of any recording costs associated therewith.

**34.** **Rights and Remedies of Trustee.** Any sale of the Trust Property, whether by way of the assent to decree or power of sale, shall be made in accordance with (i) the provisions of the District of Columbia Code, (iii) other applicable general or local laws of the District of Columbia or judicial rules of procedure relating to the foreclosure of deeds of trust, and (iv) to the extent not inconsistent with the foregoing, in accordance with the terms set forth below.

(a)    In addition to any other rights they may have at law or in equity, following an Event of Default hereunder, (i) Trustee may take possession of and sell the Trust Property, or any part thereof requested by Beneficiary to be sold, and in connection therewith Grantor hereby (A) assents to the passage of a decree for the sale of the Trust Property by the equity court having jurisdiction, and (B) authorizes and empowers Trustee to take possession of and sell (or in case of the default of any purchaser to resell) the Trust Property, or any part thereof, all in accordance with the laws or rules of court of the District of Columbia relating to deeds of trust, including any amendments thereof, or additions thereto, which do not materially change or impair the remedy. In connection with any foreclosure, Beneficiary and/or Trustee may (y) procure such title reports, surveys, tax histories and appraisals as they deem necessary, and (z) make such repairs and additions to the Trust Property as they deem advisable, subject to the terms and provisions contained in the Leases, all of which shall constitute Expenses (hereinafter defined). In the case of any sale under this Deed of Trust, by virtue of judicial proceedings or otherwise, the Trust Property may be sold as an entirety or in parcels, by one sale or by several sales, and any fixtures or collateral encumbered by this Deed of Trust may be sold at the same sale as the Trust Property or in· one or more sales, as may be deemed by Trustee to be appropriate and without regard to any right of Grantor or any other person to the marshalling of assets, for cash, on credit or for other property, for immediate or future delivery, and for such price or prices and on such terms having first given such notice prior to the sale of such time, place and terms by publication in at least ·one newspaper published or having general circulation in the county or counties in which the Trust Property is located or at such time or times as may be required by the laws of the District of Columbia or rule of court of the District of Columbia, and such other times and by such other methods, if any, as Trustee, in its sole discretion, shall deem advantageous and proper. "Expenses" means all costs and expenses of any nature whatsoever incurred at any time and from time to time (whether before or after a Default) by Beneficiary or Trustee in exercising or enforcing any rights, powers and remedies provided in this Deed of Trust or any of the other Loan Documents, including, without limitation, attorneys' fees, court costs, receivers' fees, management fees and costs incurred in the repair, maintenance and operation of, or taking possession of the Trust Property, subject to the terms and provisions contained in the Leases as to the costs for maintenance arid repair, or selling, the Trust Property.

(b)    Any sale hereunder may be made at public auction, at such time or times, at such place or places, and upon such terms and conditions and after such previous public notice as

Trustee shall deem appropriate and advantageous and as required by the laws of the District of Columbia.

(c)     Upon the terms of such sale being complied with, Trustee shall convey to, and at the cost of, the purchaser or purchasers the interest of Grantor in the Trust Property so sold, free and discharged of and from all estate, title or interest of Grantor, at law or in equity, such purchaser or purchasers being hereby discharged from all liability to see to the application of the purchase money.

(d)     Beneficiary and any affiliate thereof may be a purchaser of the Trust Property or of any part thereof or of any interest therein at any public sale thereof, whether pursuant to foreclosure or power of sale or otherwise hereunder, without forfeiting its right to collect any deficiency from Grantor; and Beneficiary may apply upon the purchase price the Debt secured hereby owing to Beneficiary. Beneficiary, upon any such purchase, shall acquire good title to the properties so purchased, to the extent permitted by law, free of the lien of this Deed of Trust and free of all rights of redemption in Grantor and free of all liens and encumbrances subordinate to this Deed of Trust.

**35. Substitution of Trustee.** Beneficiary may, by filing a deed of appointment in the office where this Deed of Trust is recorded, appoint an additional or replacement Trustee and may remove a Trustee from time to time without notice to the Grantor or the Trustee being removed and without specifying any reason.

**36. Multiple Trustees.** If there are multiple Trustees appointed hereunder, any Trustee, acting alone, may exercise all powers granted to the Trustees collectively without the necessity of the joinder of any other Trustee.

**37. Resignation of Trustee.** Any Trustee hereunder may resign upon thirty (30) days' prior written notice to the Beneficiary.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, the Grantor has caused this Deed of Trust to be executed and delivered intending that this be an instrument under seal, as of the year and day first above written.

WITNESS OR ATTEST:                          **K STREET, LLC**

_____        By: _____ (SEAL)
                                                Habte Sequar, Manager

[SEAL]


Address for Grantor:  1610 11th Street, NW, #4A

                     Washington, DC 20001


STATE OF                          )

                                  )      ss:

COUNTY OF                         )

I HEREBY CERTIFY that on this 25ᵗʰ day of June, 2018, before me, the subscriber, a Notary Public in and for the jurisdiction aforesaid, personally appeared **HABTE SEQUAR** in said jurisdiction, the Manager of **K STREET, LLC**, a District of Columbia limited liability company, personally well known to me (or satisfactorily proven) to be the person who executed the foregoing Deed of Trust; and, in such capacity, being first duly authorized, acknowledged that they executed the foregoing Deed of Trust for the purposes therein contained, and delivered the same as such for and on behalf of said limited liability company.

WITNESS my hand and Notarial Seal the year and day first above written.


_____
Notary Public

My Commission Expires: _____

RICHARD C. EISEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires July 14, 2018

22

## *FIRST AMERICAN TITLE INSURANCE COMPANY*
### COMMITMENT FOR TITLE INSURANCE

**Commitment No.** █████████

### EXHIBIT "A"
### LEGAL DESCRIPTION

**The Leasehold Estate and all buildings and improvements on the property more specifically described below, created by the terms of the Ground Lease between Valor 1634, LLC, a District of Columbia limited liability company and K Street, LLC, a District of Columbia limited liability company, as evidenced by the Memorandum of Ground Lease Agreement recorded among the Land Records of the District of Columbia:**

Lot numbered One Hundred Twenty-Two (122) in Square numbered One Thousand Two (1002) as per plat recorded in the Office of the Surveyor for the District of Columbia in Book 210 at Page 152.

### (END OF EXHIBIT "A")

**Doc #: 2018063537**
**Filed & Recorded**
**06/26/2018 12:48 PM**
**IDA WILLIAMS**
**RECORDER OF DEEDS**
**WASH DC RECORDER OF DEEDS**
  **RECORDING FEES**      **$150.00**

  **SURCHARGE**         **$6.50**
**TOTAL:**            **$156.50**